# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 4487 | **DATE** | 9/29/2011 |
| **CASE TITLE** | Jerry Tyson, *et al*. vs. Joseph Hrubos, *et al*. | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion for summary judgment is granted [33] in part and denied in part. Judgment is granted in favor of Jerry Tyson on his claim for unjust enrichment in Count IV. Defendant Joseph Hrubos is ordered to pay $506,000 plus interest to plaintiff Jerry Tyson.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

    This lawsuit arises out of a failed business relationship between two men -- plaintiff Jerry Tyson and defendant Joseph Hrubos. As described below, the facts about what happened are hazy in many respects, and this lawsuit has unfortunately not really clarified many of them. Nevertheless, it is time to bring this lawsuit to a conclusion.

    Jerry Tyson is an American citizen from Ohio who at the relevant time was living in Kulala Malaysia where he was working as company director for NCM Global Sdn. Bhd. ("NCM"). He was also the owner of NCM. Tyson negotiated with defendant Joe Hrubos, the owner of Phoenix Machine Tool Co., for an H 63 Five Axis high speed machine, which makes parts for the automobile and aviation markets. The two men were negotiating a contract, partly through email exchanges. The evidence regarding these negotiations is sketchy, but it appears at some point that Tyson believed the two men had reached an agreement in which Tyson and his corporation would buy a machine from Hrubos and his corporation. On February 10, 2007, Tyson wired $506,000 to Hrubos in the name of Phoenix Machine Tool's bank account in Barrington, Illinois. (Plaintiff Mot. ¶¶ 5-6.) This amount was supposed to be a downpayment for the machine. Later, Hrubos allegedly told Tyson that he needed to change the specifications for the machine and that a larger downpayment was required. (Tyson Aff. ¶ 8.) Tyson, who apparently was getting suspicious about whether Hrubos and his company were legitimate, asked for his money back. Hrubos refused, and this lawsuit ensued. Relying on diversity jurisdiction, Tyson asserted five state law claims against Hrubos and his corporation: (1) for money had and received, (2) fraud in the factum, (3) conversion, (4) unjust enrichment, and (5) violation of the Illinois Fair Businesses Practices Act. For the first four counts, he seeks recovery of the $506,000 plus interest. For the fifth count, he seeks treble damages and attorneys' fees.

    Initially, defendants did not file an answer. So plaintiff moved for a default judgment. Before this motion was ruled upon, defendants filed an answer in which they denied a number of the allegations but did admit that Tyson sent $506,000 to defendants. *See* Answer ¶ 3.

    Thereafter this Court assigned the case to Magistrate Judge Cole who attempted over several months to

conduct a settlement conference. His efforts were hampered by counsel's conduct, as Judge Cole documented in several minute orders. For example, Judge Cole noted that at the first status hearing on December 18, 2009, plaintiff's counsel "failed to appear" and failed "to call Chambers to say he could not attend the hearing." (Docket # 17). Plaintiff's counsel later sought to avoid Judge Cole's rule that counsel must appear in person. (Docket # 21.) Judge Cole also noted that plaintiff's counsel "made no attempt to comply with Judge Cole's standing orders for settlement conference" and instead submitted a 1 and ½ page document that was "noncompliant in every way with the requirements of my standing order." (Docket # 25.) Eventually, after much effort, a settlement conference was held. The parties indicated that settlement was not possible. (Docket # 26.)

Defendants' counsel then moved to withdraw. He stated that since the settlement conference, he had "been unable to speak to Joe Hrubos, and it appears from attempts at email communication that responsive communication will not be possible going forward." (Docket # 28 at p.1.) Counsel stated that his client had "clearly communicated" that he would refuse to pay for counsel's past or future services. (*Id.*) This Court granted the motion to withdraw, and subsequently held two status hearings. Defendants did not appear at either hearing. Plaintiff then filed a motion for summary judgment in which he attached his own affidavit and one from his attorney. Both affidavits have exhibits attached. This Court set a briefing schedule. Plaintiff filed a combined motion/brief, but defendants never filed a response brief.

We now consider this unopposed motion for summary judgment. However, simply because the motion is unopposed does not mean that it should be automatically granted. *See Easley v. Kirmsee*, 382 F.3d 693, 699 (7th Cir. 2004) (when a party does not respond to a summary judgment motion the Court has discretion to rule on the merits of the motion); *USA Satellite & Cable, Inc. v. North Am. Cable Equip., Inc.*, 2011 WL 1692391, *6 (N.D. Ill. May 2, 2011) ("In accordance with Local Rule 56.1, which this Court strictly adheres to, litigants must support facts, even if unopposed, with specific references to the record and with evidence admissible at trial in order for such facts to be deemed admitted.").

In reviewing the material submitted by plaintiff, we find that plaintiff has clearly established what appears to be the primary point he sought to establish -- namely, that he paid $506,000 to defendants and got nothing in return. Although plaintiff in several places refers to a contract, his four common law counts all rest on a quasi-contractual theory of recovery which assumes no legally binding contract was formed. All four counts also seek recovery of only the $506,000 plus interest from February 10, 2007. And all four counts rest on the simple notion that it would be unfair for Hrubos to pocket the money and fail to provide anything in return.

Plaintiff has not set forth a choice of law analysis. Based on the cases cited, he believes Illinois law applies. Although the claims appear to be duplicative, we find that the fourth claim for unjust enrichment is the most appropriate and is the one with which this Court is more familiar. (We are unaware of the cause of action identified as a claim for "money had and received.") In Illinois, and presumably in every common law jurisdiction, there is a cause of action for unjust enrichment, sometimes called by other names such as *quantum meruit*. These quasi-contractual claims apply when "no actual agreement between the parties occurred, but a duty is imposed to prevent injustice." *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004). The plaintiff "must show that valuable services or materials were furnished by the plaintiff, received by the defendant, under circumstances which would make it unjust for the defendant to retain the benefit without paying." *Id.*

In considering the undisputed facts here, we find that these elements have been met. To begin with, the evidence does not show that the parties ever entered into a formal written contract, even though they were attempting to negotiate one and even though Tyson believed they had an informal agreement. As noted above, it is undisputed that Tyson paid defendants $506,000. *See* Answer, ¶¶ 3, 13, and 17. This transfer is also evidenced by the Chase bank records submitted by plaintiff. *See* Middleton Aff. Ex. D. It is also undisputed that defendants never provided the machine nor anything of value. Accordingly, under the principles of unjust enrichment, as well as general notions of fairness, defendants should return this money

| STATEMENT |
|---|

with interest. No reasonable person could conclude otherwise.

The only remaining question is whether plaintiff should also recover, on a summary judgment motion, treble damages and attorneys' fees, which plaintiff seeks only under his fifth count, a claim for violation of the Illinois Fair Business Practices Act. (He later correctly identifies the statute as the Illinois Consumer Fraud and Deceptive Business Practices Act.) Plaintiff's claim rests on the assertion that Hrubos was essentially operating a fraudulent scheme from the start and never had any intention to provide any machine. Plaintiff notes that the business addresses of the corporation are, according to Google maps, only mail drops. In defendants' answer to the complaint, they objected to this fifth claim because, among other reasons, the statute does not apply here because the parties are merchants and not consumers as defined by the statute. (Answer at p. 9).

In his summary judgment brief, plaintiff argues that Hrubos engaged in "bait and switch" tactics by "not having the available products" and by not intending to supply the product. (Pl. Mot. at 12.) But plaintiff never addresses the one argument made by defendants in their answer - namely that this is a transaction between businesses and does not involve a consumer. Moreover, plaintiff fails to coherently marshal the evidence in a simple but basic way that this Court can follow. Instead, he repeatedly falls back on general and largely unsupported assertions that defendants never had the machine nor the intention of providing one. Despite several attempts to understand the facts, this Court is still unable to piece together the basic chronology regarding the course of negotiations nor are we able to understand what plaintiff's basic position is on whether and when a contract was formed. Several documents and invoices have been submitted, but it is not clear which one is supposed to binding nor how they relate together. In short, many basic questions remain unanswered, and this is true even with respect to those facts within the plaintiff's control. We realize that defendants' decision not to defend in this lawsuit has placed some limitations on plaintiff's ability to present his case, and we further acknowledge that defendants' actions remain suspicious based on the evidence presented. Still, in the end, we find that the evidence plaintiff chose to submit is simply too fragmentary and too conclusory to provide this Court with sufficient confidence to enter judgment on the Consumer Fraud Act claim and thereby award treble damages to plaintiff.